1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   CAROLYN CARLTON BROCKMEIER,

11              Plaintiff,                    No. CIV. S-05-2090 MCE EFB PS

12        vs.

13   SOLANO COUNTY SHERIFF'S               ORDER AND FINDINGS
     DEPT., et al.,                        AND RECOMMENDATIONS
14
                Defendants.
15   _____/

16              Plaintiff, proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983

17   on December 27, 2005.  The case was referred to an assigned magistrate judge pursuant to Local

18   Rule 72-302(c)(21).  Presently before the court is defendants' motion to dismiss.  Following

19   completion of briefing, the motion was taken under submission without oral argument on

20   January 13, 2006.[1]  After careful review of the moving and opposing papers, the court issues the

21   following order and findings and recommendations.

22   I.  BACKGROUND

23              The complaint alleges that defendants Solano County Sheriff's Department, the

24   County of Solano, "Deputy Gilliam," "Deputy Knight," and "Deputy Munck" (referred to

25   _____

26        [1] On August 29, 2006, this case was reassigned to the undersigned due to the retirement
     of Magistrate Judge Peter A. Nowinski.

                                            1

1   collectively herein as "defendants") violated plaintiff's constitutional rights by making "an

2   unauthorized, unwarranted search of Plaintiff's home. . . ."  *See* Complaint ("Compl."), at ¶ 9.

3   The facts in this regard are, indeed, curious.  Plaintiff alleges that she called the Solano County

4   Sheriff's Department to report an attempted burglary of her home.  However, when the officers

5   arrived she requested that they not search her home since she "had already searched and secured

6   the premises herself."  *Id*.  Plaintiff alleges that despite her request that they not do so, the

7   sheriff's deputies entered her home by forcing open a kitchen window.  Compl., at ¶ 11.  She

8   further alleges that the deputies "rifled through plaintiff's confidential legal files in violation of

9   her clients' attorney-client privilege."  (Plaintiff alleges that she is a semi-retired attorney).

10  Compl., ¶¶ 12, 17.  According to the complaint, the deputies then reported the "substandard

11  living conditions" observed in plaintiff's house to county compliance officers.  The compliance

12  officers, apparently concurring as to the conditions, "yellow-tagged" the house.  Doing so,

13  plaintiff alleges, diminished the value of the property.  She alleges that this caused her to sell the

14  house at a "distress price" and rendered her homeless.   Compl., at ¶ 13-15.

15          Plaintiff alleges that defendants' actions violated her federally protected rights

16  under the Constitution and she seeks damages under 42 U.S.C. § 1983.  Compl., at ¶ 1.

17  Specifically, she alleges that defendants violated her "right to be free of unreasonable searches of

18  her home under the Fourth and Fourteenth Amendments . . . [and that such violations resulted

19  from] the customs, practices, and policies of defendant Solano County Sheriff's Department, the

20  County of Solano, and Sheriff's Deputies named and alleged here as DOES."  Compl., at ¶ 16.

21  She alleges that defendants entered her home "without probable cause," Compl., at ¶1, and

22  caused her "injury, loss and damage, including loss of value of her property, loss of liberty, loss

23  of home, invasion of privacy, emotional distress, psychological and physical trauma, pain, and

24  suffering."  Compl., at ¶ 18.

25  ////

26  ////

II.  <u>REQUEST FOR JUDICIAL NOTICE</u>

As a preliminary matter, defendants ask the court to take judicial notice of three items: (1) the fact that plaintiff is a licenced attorney in the state of Washington; (2) the fact that Gary R. Stanton is the sheriff of Solano County; and (3) a case from the Northern District of California, *Walker v. County of Santa Clara*, Case No. C-04-02211 RMW, wherein the court followed a California Supreme Court case, *Venegas v. Co. of Los Angeles*, 32 Cal.4th 820 (2004), and held that California sheriffs act as state officers while performing state law enforcement duties such as investigating possible criminal activity – a decision that directly conflicts with the Ninth Circuit case, *Brewster v. Shasta County*, 275 F.3d 803 (9th Cir. 2001). *See* Defendants' Request for Judicial Notice in Support of Motion to Dismiss Pursuant to F.R.C.P. Rule 12(b)(6), ("Request for Judicial Notice").   The last item is simply a citation to legal authority, not an evidentiary fact.

As to items (1) and (2), it is clear that each may be judicially noticed.  The party requesting judicial notice bears the burden of persuading the court that the particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source whose accuracy cannot reasonably be questioned and supplying the court with the source material needed to determine whether the request is justified.  *In re Tyrone F. Conner Corp., Inc.*, 140 B.R. 771, 781-82 (E.D. Cal. 1992); Fed. R. Evid. 201(b).  Specifically, the party must submit to the court a formal pleading, entitled "Request for Judicial Notice" that enumerates (1) the basis for taking judicial notice, and (2) the item to be noticed (with copies, preferably certified, of the files or materials attached).  *American Glue & Resin v. Air Products & Chemicals*, 835 F. Supp. 36, 40-41 (D. Mass. 1993).

Defendants have submitted the proper formal pleading and sufficient source material to determine the request.  As to the first item, defendants submit information from the bar association for the State of Washington showing that plaintiff is indeed a licensed attorney. *See* Request for Judicial Notice, at 1:23-26; Declaration of John R. Whitefleet in Support of

1   Motion to Dismiss ("Whitefleet Decl."), Ex. A.  Although the court takes judicial notice of

2   plaintiff's status as a licensed attorney, it declines to grant defendants' request that the court not

3   treat plaintiff as a pro se litigant.  Plaintiff's status as a lawyer "does not change her status as a

4   pro per plaintiff since [s]he is, without question representing [herself]."  *Spittal v. Apel*, 2006

5   U.S. Dist. Lexis 25218, at *13 (E.D. Cal. Mar. 24, 2006) (citing *Kay v. Ehler*, 499 U.S. 432, 437

6   (1991) (denying attorney's fees to lawyer appearing pro se and observing that a lawyer appearing

7   pro se is "deprived of the judgment of an independent third party")).

8         The court also takes judicial notice of the fact that Gary R. Stanton is the sheriff

9   of Solano County.  Whitefleet Decl., Ex. B.  Finally, the court has considered the *Walker v.*

10   *County of Santa Clara* case as a citation to an unpublished decision and addresses its holding and

11   analysis below.[2]  *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978)

12   (holding that judicial notice may be taken of court records).

13 III. <u>MOTION TO DISMISS</u>

14         Defendants move pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P")

15   12(b)(6), to dismiss the complaint for failure to state a claim.  First, defendants argue that the

16   Solano County Sheriff's Department is not a separate legal entity and should therefore be

17   dismissed as a redundant and unnecessary party.  Second, defendants argue that plaintiff fails to

18   state a claim against the County of Solano because the policies, practices and procedures at issue

19   are the state's not the county's, thereby making the county an improper defendant in this action.

20   Third, defendants assert that plaintiff fails to state a claim for a violation of her Fourth

21   Amendment rights pursuant to 42 U.S.C. § 1983 because probable cause and exigent

22   circumstances existed when defendants entered plaintiff's home.  Fourth, defendants argue that

23   plaintiff fails to state a claim for a violation her rights under the Fourteenth Amendment because

24

25       [2]  This third item, as noted, does not seek to establish any particular fact.  It is an opinion
from the Northern District of California citing legal authority from the California Supreme
26   Court, and is simply a citation to legal authority.

1    her claims concern an alleged unlawful search, which is properly analyzed under the Fourth, and

2    not the Fourteenth Amendment.  Finally, defendants argue that Deputy Gilliam, Deputy Knight,

3    and Deputy Munck are entitled to qualified immunity for entry into plaintiff's residence.  The

4    court addresses each requested basis for dismissal below.

5          A.    Standard

6                A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6) unless it

7    appears beyond doubt that plaintiff can prove no set of facts in support of its claims which would

8    entitle plaintiff to relief.  *NOW, Inc. v. Schiedler*, 510 U.S. 249, 256 (1994); *Cervantes v. City of*

9    *San Diego*, 5 F.3d 1273, 1274-75 (9th Cir. 1993).  Dismissal may be based either on the lack of

10   cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal

11   theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

12               The complaint's factual allegations are accepted as true.  *Church of Scientology of*

13   *California v. Flynn*, 744 F.2d 694 (9th Cir. 1984).  The court construes the pleading in the light

14   most favorable to plaintiff and resolves all doubts in plaintiff's favor.  *Parks School of Business,*

15   *Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  General allegations are presumed to

16   include specific facts necessary to support the claim.  *NOW*, 510 U.S. at 256 (quoting *Lujan v.*

17   *Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

18               The court may disregard allegations contradicted by the complaint's attached

19   exhibits.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);  *Steckman v. Hart*

20   *Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).  Furthermore, the court is not required to

21   accept as true allegations contradicted by judicially noticed facts.  *Mullis v. United States*

22   *Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).  The court may consider matters of public

23   record, including pleadings, orders, and other papers filed with the court.  *Mack v. South Bay*

24   *Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria*

25   *Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).  "The court is not required to

26   accept legal conclusions cast in the form of factual allegations if those conclusions cannot

                                                    5

reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

B.  Solano County Sheriff's Department Is Not a Properly Named Party

The court first addresses the issue of whether the Solano County Sheriff's Department is a redundant party. The Department premises this argument on the contention that the Sheriff's Department was improperly named as a separate defendant because it is a municipal department within the county and not a separate legal entity.   In opposition, plaintiff asserts that "it is for the court to determine, based on facts gathered during discovery, whether Solano County Sheriff's Department is a separate legal entity." *See* Plaintiff's Response to Defendants' Motion to Dismiss ("Opp'n"), at 3:16-20.

Under 42 U.S.C. § 1983, a plaintiff  may pursue claims against "persons" acting under the color of state law. The term "persons" in this context does not encompass municipal departments. *Vance v. County of Santa Clara*, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996) (holding that "naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality," and dismissing the Santa Clara Department of Corrections from the action); *United States v. Kama*, 394 F.3d 1236, 1240 (9th Cir. 2005) (Ferguson, J., concurring) ("municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983") (citing *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995), *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (affirming district court's dismissal of claims against a county sheriff's department), and *Smith-Berch, Inc.*

6

1   *v. Baltimore County*, 68 F. Supp. 2d 602, 626-27 (D. Md. 1999)).

2        Because the Solano County's Sheriff's Department is a municipal department of

3   Solano County, the court therefore finds that the Sheriff's Department is not a properly named

4   defendant for purposes of plaintiff's § 1983 claims.[3]  Accordingly, the court RECOMMENDS

5   that the Solano County Sheriff's Department be dismissed from the action with prejudice.

6        C.   Solano County Is Subject to Section 1983 Liability

7        Next, defendants argue that plaintiff fails to state a claim against the County of

8   Solano because the Solano County Sheriff acts as an arm of the state, not the county, with

9   respect to its law enforcement policies, customs or practices, which appear to be the basis of all

10  plaintiff's claims.  *See* Defendants' Motion to Dismiss Pursuant to FRCP Rule 12(b)(6);

11  Memorandum of Points and Authorities in Support Thereof ("MTD"), at 4:25–5:4.

12        Whether the Sheriff acts as an arm of the state or on behalf of a local entity is a

13  fundamental, threshold inquiry to plaintiff's suit.  In the absence of consent to suit or a clearly

14  expressed waiver of immunity, a state is immunized from suit in federal court by the Eleventh

15  Amendment.  *Pennhurst State Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984).  Moreover, a

16  suit for damages against a state official, in his official capacity, is tantamount to a suit against the

17  state itself and is likewise barred by the Eleventh Amendment absent an expressed waiver or an

18  expressed Congressional abrogation of the state's immunity.  *Id*.  Section 1983 does not abrogate

19  Eleventh Amendment  immunity of state governments.  *Quern v. Jordan*, 440 U.S. 332, 345

20  (1979).  In contrast, political subdivisions of the state have no Eleventh Amendment immunity

21  from suit in federal court.  *Moor v. County of Alameda*, 411 U.S. 693, 717-21 (1973).  Apart

22  from immunity to suit in federal court, there is a similar statutory state-local distinction that must

23  be made for purposes of liability under Section 1983.  Even assuming consent to such a suit, the

24
        [3] However, as discussed below, the court also finds that contrary to defendants'
25  assertions, Solano County is a proper party.  It appears at least self-contradictory, if not
    disingenuous, to argue in one breath that the sheriff's department, as a legal entity, is indistinct
26  from the county, and in the next breath argue that the sheriff is a state, not a county actor.

1   Supreme Court has held that neither a state nor a state official in his official capacity is a

2   "person" for purposes of a section 1983 damages action.   *Will v. Mich. Dept. of State Police*,

3   491 U.S. 58, 71 (1989).   The Court in *Will* reaffirmed the principle that a suit against a state

4   official in his or her official capacity is not a suit against the official; it is a suit against the

5   official's office, and as such, is a suit against the state itself.   *Will*, 491 U.S. at 71 (citations

6   omitted).   By contrast, a local governmental unit or municipality can be sued as a "person"

7   under § 1983 for its policies, practices or customs that cause constitutional torts or result in

8   deprivations of federally protect rights.   *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th

9   Cir. 2000) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).

10   The court's task is to "identify those officials or governmental bodies who speak with final

11   policymaking authority for the local governmental actor" concerning the alleged constitutional

12   or statutory deprivation at issue.   *McMillian v. Monroe County*, 520 U.S. 781, 784-85 (quoting

13   *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

14            In this case, the alleged deprivation of a federally protected right is the alleged

15   unconstitutional search of plaintiff's home following plaintiff's call reporting an attempted

16   burglary.   Although the complaint is less than precise in its allegations, plaintiff does allege that

17   her constitutional rights were violated "as a result of the customs, practices, and policies" of

18   defendants.   Compl., at ¶ 16.[4]

19   ////

20

21

---

22        [4] The court notes that to prevail on her section 1983 claim, plaintiff will have to show
     that this allegedly unconstitutional conduct by defendants was not merely a "single incident of
23   unconstitutional activity" but rather caused by an "existing, unconstitutional policy, which policy
     can be attributed to a municipal policymaker." *Fargo v. San Juan Bautista*, 857 F.2d 638, 643
24   (9th Cir. 1988) (quoting *City of Okl. City v. Tuttle*, 471 U.S. 808, 824 (1985)).   This issue,
     however, is not presently before the court, which at this point is merely deciding defendants'
25   Rule 12(b)(6) motion.   In reviewing such a motion, the court examines only the sufficiency of
     the complaint rather than the sufficiency of the evidence.   The court finds that at this stage,
26   plaintiff has plead facts sufficient to state a claim under 42 U.S.C. § 1983.

Defendants have identified Solano County Sheriff Stanton as having final policymaking authority over the actions at issue.  MTD, at 6:1-9.  Plaintiff does not dispute that contention.  Thus, the issue of the county's section 1983 liability turns on whether the sheriff, when investigating crimes in that role as policymaker, acts on behalf of the state (which would immunize the county from section 1983 liability) or on behalf of the county (which would subject the county to section 1983 liability).  While the question appears to have an intuitively obvious answer, the Ninth Circuit and the California Supreme Court have squarely addressed this issue and their decisions are in direct conflict.  *See*, *Brewster v. Shasta County*, 275 F.3d 803 (9th Cir. 2001) (holding that California sheriff's departments act on behalf of the county when investigating crimes); *Venegas v. Co. of Los Angeles*, 32 Cal.4th 820 (2004) (holding that a sheriff acts on behalf of the state when investigating crimes).  In each case, both the Ninth Circuit Court of Appeals and the California Supreme Court applied the analytical framework set forth in *McMillian v. Monroe County*, 520 U.S. 781 (1998), but nonetheless reached conflicting conclusions.  Resolving the finer point of which precedent controls here is the challenge presented by this motion.

1.  The *McMillian* Framework

In *McMillian*, the Supreme Court made clear that its determination of a sheriff's official capacity was guided by two principles.  *McMillian*, 520 U.S. at 785.  "First, the question is not whether" the sheriff acts for the county "in some categorical, 'all or nothing' manner."  *Id.* at 785.  The court must address whether the official is a "final policymaker for the local government in a particular area, or on a particular issue."  *Id.*  Second, the court's analysis is "dependent on an analysis of state law."  *Id.*  ("[O]ur understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's function under relevant state law.").  *Id.*

The court in *McMillian* examined relevant Alabama law, focusing on the Alabama Constitution and its provisions concerning sheriffs as well as relevant provisions in the

9

Alabama Code.  The court found most compelling those provisions in the Alabama Constitution designating sheriffs as executive officers of the state and the Alabama Supreme Court's interpretation of those provisions as "evidence of 'the framers' intent to ensure that sheriffs be considered executive officers of the state." *Id.* at 789.

In reviewing the Alabama Code, the Court found the relevant provisions "less compelling" than those in the state constitution.  *Id.*  However, most compelling among the code provisions were those which pointed to the county's lack of "direct control over how the sheriff fulfills his law enforcement duties" and that such control lay instead with the governor and attorney general.  *Id.* at 791.  In balancing these provisions with other less compelling provisions, the court held that Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties.  *Id.* at 793.

2. Conflicting interpretations of California Law under *McMillian*

In California, the issue of whether a sheriff is a state or county actor is less clear than in Alabama.  There are several provisions, both under the California constitution and the California code, that lend themselves to dueling interpretations under the analytical framework established in *McMillian*.  This is evidenced by the California Supreme Court's recent decision in *Venegas*, which directly conflicts with the Ninth Circuit's interpretation of California law in *Brewster*.

The question reduces to which forum's law controls here.  The Ninth Circuit's interpretation pre-dated the California Supreme Court's analysis in *Venegas*.  Thus, it lacked the benefit of the analysis by the state's highest court on what superficially appears to be a question of state law.  Although the holding in *Venegas* might be viewed as dispositive state law under *McMillian*, the decision concerns an issue that is ultimately federal in nature.  That is, the ultimate issue is whether or not California sheriffs are subject to liability under 42 U.S.C. § 1983 when executing their law enforcement duties.   This is an ultimate question of federal law even though it requires the application of some principles of state law to resolve it.  *Streit v. County of*

1   *Los Angeles*, 236 F.3d 552, 560 (9th Cir. 2001) ("The question of municipal liability under

2   section 1983 is one of federal law.").  Under the U.S. Supreme Court's *McMillian* analysis, the

3   state law has relevance as the second prong, but it alone is not decisive.  First, the question is

4   whether the official is a "final policymaker for the local government [Solano County] in a

5   particular area, or on a particular issue." 520 U.S. at 785.  The Supreme Court was clear that this

6   is not simply a question of whether the sheriff acts for the county "in some categorical, 'all or

7   nothing' manner."  It is a pragmatic inquiry into the reality of the sheriff's role and authority.

8   Thus, while *Venegas* is relevant in this court's "analysis of state law" as required by *McMillian*,

9   it does not overturn Ninth Circuit precedent on the ultimate question under the federal statute.

10  Unless overturned by a panel of the Ninth Circuit or the United States Supreme Court, the Ninth

11  Circuit's holding in *Brewster* binds this court.  Furthermore, an independent analysis of the issue

12  reveals that the *Brewster* decision reflects a stricter adherence to the *McMillian* framework than

13  the *Venegas* decision, whose holding is based largely on two state court decisions that the

14  *Brewster* court rejected.  *Brewster*, 275 F.3d at 807-08, 810, 811.

15                              a.   *Venegas and Brewster*

16          In *Brewster*, the Ninth Circuit squarely addressed the issue of whether sheriffs,

17  when investigating crimes, are state or county actors.  The court held that "the sheriff's

18  department, when investigating crime, acts for the county, and the county is therefore subject to

19  § 1983 liability." *Brewster*, 275 F.3d at 805.  The court arrived at its determination after a

20  thorough analysis of California law under the *McMillian* framework.

21          The court examined the California Constitution and discussed two key provisions

22  relevant to the role of sheriffs in their law enforcement capacity.  The court identified Article XI,

23  section 1(b) of the California Constitution, which designates sheriffs as county officers.  *Id.* at

24  807.  The court also addressed Article V, section 13 of the California Constitution, which "places

25  California sheriffs under the 'direct supervision' of the Attorney General."  *Id.* at 808.  The court

26  analyzed other statutory provisions that give shape to this article and provide the Attorney

                                              11

General with supervisory powers over sheriffs, including Cal. Gov't Code § 12560 ("giving the Attorney General the power to require written reports concerning the investigation, detection, and punishment of crime in the county"), Cal. Gov't Code § 12561 ("giving the Attorney General the power to appoint persons to perform the duties of sheriffs with respect to the investigation of a particular crime"),  and Cal. Gov't Code § 12524 ("giving the Attorney General the power to call a conference of district attorneys, sheriffs, and police chiefs for the purpose of furthering 'uniform and adequate enforcement' of state law").  Despite these provisions, the court decided that reliance on "Article V, section 13, 'would prove too much, as the California Constitution permits the Attorney General to supervise all other law enforcement officers as may be designated by law.'"  *Id.* at 809 (quoting *Roe v. County of Lake*, 107 F. Supp. 2d 1146, 1150-51 (N.D. Cal. 2000)).

The *Brewster* court also addressed Cal. Gov't Code § 25303, which prohibits the county board of supervisors from obstructing the investigative function of the sheriff.  *Id.* at 809. The court interpreted this provision as being "directed at preserving the independence of the sheriff from political pressure."  *Id.* at 809-10 (citing statutory language mandating that "this section shall not be construed to affect the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and district attorney of a county.").  Construing this provision as a separation of powers provision, the court found that it therefore had "no obvious bearing on whether the sheriff should be understood to act for the state or the county when investigating crime within his county."  *Id.* at 810.

Furthermore, the court noted that although a California county board of supervisors may not obstruct the sheriff's investigative function, such board does have a "'statutory duty to supervise the conduct of all county officers,' including county sheriffs."  *Id.* (quoting Cal. Gov't Code § 25303).  The court further discounted the weight of Article V, section 13, noting that unlike the constitutional provisions concerning district attorneys, that section does not permit the Attorney General to assist the county sheriff or take full charge of an

1   investigation.  *Id*. at 810-11.

2           Unlike the Ninth Circuit's opinion in *Brewster*, the California Supreme Court's

3   *Venegas* opinion does not recite an independent and detailed analysis of relevant state

4   constitutional and statutory provisions.  Rather, that opinion bases its holding largely on two

5   previous California Supreme Court cases, *Pitts v. County of Kern*, 17 Cal.4th 340 (1998)

6   ("*Pitts*") and *County of Los Angeles v. Superior Court*, 68 Cal.App.4th 116 (1998) ("*Peters*").

7   The California Supreme Court held that those decision "more accurately" reflect California law

8   than the *Brewster* decision.  *Venegas*, 32 Cal.4th at 830.  It did not comment on the fact that

9   *Brewster*, unlike *Pitts* and *Peters*, squarely addresses the issue of whether a California sheriff

10  acts on behalf of the state or county when investigating crime, the central question that forms the

11  very core of the issue of Section 1983 liability.

12          The decision in *Pitts* concerned district attorneys and whether they were state or

13  county actors.  *Pitts*, 17 Cal.4th at 362 (holding that district attorneys are state agents when

14  investigating and prosecuting crime, or when training staff and developing policy involving such

15  matters.).  The decision in *Peters*, although a little closer to the mark, held that California

16  sheriffs were state actors with respect to their role  "in setting policies concerning the release of

17  persons from the county jail."  *Venegas*, 32 Cal.4th at 833.   The *Venegas* court simply recites

18  the reasoning in *Peters*, and concludes that the holding should be extended to a sheriff's actions

19  in investigating crimes.  *Venegas*, 32 Cal.4th at 833-34.  The *Venegas* court then challenges the

20  holding in *Brewster*, mistakenly asserting that the Ninth Circuit failed to follow the "guidance

21  given by *McMillian, Pitts* and *Peters*."  *Id*. at 835.  As discussed above, the Ninth Circuit opinion

22  in *Brewster*, in great detail, applies and  follows the *McMillian* framework.  Not only did the

23  *Brewster* panel of the Ninth Circuit carefully analyze and specifically reject the *Pitts* and *Peters*

24  decisions, under the *McMillian* framework it was correct in so doing.

25  ////

26  ////

b. <u>Federal Law Controls When Determining Section 1983 Liability</u>

"[F]ederal law provides the rule of decision in section 1983 actions" and "state law does not control [the Ninth's Circuit's] interpretation of a federal statute." *Streit*, 236 F.3d at 560 (rejecting *Peters* and holding that California sheriffs are subject to liability under section 1983 with regard to management of local jails). The court in *Streit* emphasized the supremacy of federal law on such issues, noting that "even if [*Peters*] were on all fours we would not be bound by its conclusion regarding section 1983 liability because such questions implicate federal, not state law." *Id.* at 564 (citing *Owen v. City of Independence*, 445 U.S. 622, 647 n. 30 (1980); *Weiner v. San Diego County*, 210 F.3d 1025, 1029 (9th Cir. 2000)).

Even though the Ninth Circuit has yet to reexamine the issue of a California sheriff's official capacity for purposes of section 1983 liability in light of *Venegas*, this court finds that *Brewster* is still controlling within the Ninth Circuit. Therefore, the court declines to follow the holding in *Walker v. County of Santa Clara*, 2005 U.S. Dist. LEXIS 42118 (N.D. Cal. Sept. 30, 2005), as defendants request.[5]

In *Walker*, the court examined the liability of sheriff's deputies for allegedly unlawful conduct in investigating a crime. The court noted that the question of liability initially turns on whether the deputies are representatives of the county or the state. *Id.* at *9-10. The court recognized that this question must be answered by evaluating the relevant state law as to the official's function in a particular area. *Id.* at *10 (citing *Weiner*, 210 F.3d at 1028; *McMillian*, 520 U.S. at 786). In addressing the *Venegas* decision, the court noted that "the California Supreme Court expressly disagreed with the Ninth Circuit's decision in *Brewster*, and

_____

[5] *Walker*, an unpublished opinion addressing the conflict between *Venegas* and *Brewster*, is the only such opinion to find *Venegas* controlling. *See Faulkner v. County of Kern*, 2006 U.S. Dist. LEXIS 44151, at *48 (E.D. Cal. Jun. 28, 2006) (rejecting *Venegas* as uncontrolling in federal court on a federal claim); *Thomas v. Baca*, 2005 U.S. Dist. LEXIS 35678, at *11-12 (C.D. Cal. May 2, 2005) (rejecting *Venegas* as binding on federal courts on a federal claim, and holding that sheriff acts for the county with respect to the release and housing practices at the county jail).

1    held that 'California sheriffs act as state officers while performing state law enforcement duties

2    such as investigating possible criminal activity.'" *Id.* at *12 (quoting *Venegas*, 32 Cal.4th at

3    839).

4         In reaching this decision, the *Walker* court relied on *Miller v. Gammie*, 335 F.3d

5    889 (9th Cir. 2003). *Id.* at *13-14. In *Miller*, the court reexamined an immunity rule for social

6    workers in light of two United States Supreme Court decisions that addressed immunity

7    generally. In its analysis, the court addressed the circumstances in which a court is "free to

8    reexamine the decision of a prior panel in light of a an inconsistent decision by a court of last

9    resort on a closely related, but not identical issue." *Miller*, 335 F.3d at 899. The *Miller* court

10   held that such reexamination is appropriate when the "relevant court of last resort [has] undercut

11   the theory or reasoning underlying the prior circuit precedent in such a way that the cases are

12   clearly irreconcilable." *Id.* at 900.

13        The circumstances surrounding the reevaluation of the law in *Miller* are notably

14   different than in the present case. First, decisions of the United States Supreme Court are

15   undeniably binding on lower courts, and as such, necessarily instruct decisions made by those

16   courts. The *Miller* court was therefore called upon to reevaluate a prior, conflicting decision.

17   Decisions by state supreme courts, on the other hand, are not binding on federal courts,

18   particularly in the area of section 1983 claims. *Weiner*, 210 F.3d at 1029 (9th Cir. 2000) (citing

19   *McMillian* in support of its independent examination of California's constitution, statutes and

20   laws for determining § 1983 liability, in lieu of "blindly" accepting the California Supreme

21   Court's determination of the issue under state law).

22        This court does not "blindly accept" the California's Supreme Court decision in

23   *Venegas*, nor does it ignore its importance to the analysis required by *McMillian* framework.

24   This court has duly considered the *Venegas* decision, but finds that it does not militate in favor of

25   a decision contrary to the holding in *Brewster*. Unlike in *Miller*, here, the state's Supreme Court,

26   not the United States Supreme Court, has issued an opinion that conflicts with a Ninth Circuit

decision on a question of interpretation of a federal statute.  More importantly, the Ninth Circuit is not bound by the *Venegas* decision, which does little or nothing to "undercut the reasoning" in *Brewster*.  The analysis in *Venegas* adds little if anything not already considered and rejected by the Ninth Circuit.  The reasoning in *Venegas* is marked not by new analysis of the relevant state statutes and constitutional provisions that relate to the first prong of the *McMillian* framework, nor a balancing of that prong with the other factors to be considered under *McMillian*, but rather by a preference for two previous California Supreme Court decisions (*Pitts* and *Peters*).  The Ninth Circuit has already determined that those cases do not control the ultimately federal issue of section 1983 liability.

Accordingly, this court finds *Brewster* controlling on the issue of whether California sheriffs are subject to section 1983 liability.  Consistent with the holding in that case, the court finds that the Solano County Sheriff's Department acts on behalf of the county when investigating crimes, and that the county is therefore subject to section 1983 liability.  Therefore, the court RECOMMENDS that defendants' motion to dismiss for failure to state a claim against the county be denied.[6]

### D. Fourth Amendment Claims – Probable Cause and Exigent Circumstances

Next, defendants argue that plaintiff fails to state a claim for violations of the Fourth Amendment because defendants' entry into her residence was lawful.  Specifically, defendants argue that the allegations in the complaint demonstrate that probable cause and exigent circumstances justified the entry.  In addressing this issue, the court is mindful of the standards applicable to a Rule 12 (b)(6) motion.  The facts alleged in the complaint will be assumed true for purposes of the motion.

"The 'physical entry of the home is the chief evil against which the wording of

---

[6] Lest plaintiff misunderstand the denial of a Rule 12 (b)(6) motion, this recommendation does not mean that plaintiff has established, in fact, a violation of her federally protected rights. It simply means that a county sheriff in California can be liable under Section 1983 if a violation of federally protected rights is actually proven.

the Fourth Amendment is directed.'"  *United States v. Martinez*, 406 F.3d 1160, 1163 (9th Cir.

2005) (quoting *United States v. U.S. District Court*, 407 U.S. 297, 313 (1972)).  "For that reason,

'searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.*

(quoting at *Payton v. New York*, 445 U.S. 573, 586 (1980)).  "There are two general exceptions

to the warrant requirement for home searches: exigency and emergency.  Under the exigency

doctrine, a warrantless search of a home is permitted if there is probable cause to believe that

contraband or evidence of a crime will be found at the premises and that exigent circumstances

exist.  As a general rule, 'we define exigent circumstances as those circumstances that would

cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the

officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some

other consequence improperly frustrating legitimate law enforcement efforts.'"  *Martinez*, 406

F.3d at 1164 (quoting *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc)

(abrogated on other grounds)).[7]

        In *Dixon v. Wallowa County*, 336 F.3d 1013 (9th Cir. 2003), a section 1983

action, the Ninth Circuit held that police may secure a home, even without a warrant, if exigent

circumstances exist such that a reasonable person would believe that entry was necessary to

prevent destruction of relevant evidence, or some other consequence improperly frustrating

legitimate law enforcement efforts.  *Dixon*, 336 F.3d at 1018.  In that case, a homeowner was

arrested for crimes allegedly committed in his home.  Police completed the search of the home

pursuant to a warrant the day of the homeowner's arrest.  According to the tenant renting a room

in the home, the police told her that the search was complete and returned control of the premises

to her.  The tenant was in the process of moving out of the home.  Later, the officers returned to

---

[7] "The emergency doctrine provides that if a police officer, while investigating within the scope necessary to respond to an emergency, discovers evidence of illegal activity, that evidence is admissible even if there was not probable cause to believe that such evidence would have been found." *Martinez*, 406 F.3d at 1164 (quoting *United* States v. Cervantes, 219 F.3d 882, 888 (9th Cir. 2000)).  Defendants have not moved for dismissal under that doctrine.

the home, declared it a crime scene, and collected additional evidence.  The tenant sued the

county under 42 U.S.C. § 1983, and alleged an unlawful search.  The court held that because the

tenant was moving (and therefore removing property from the residence), that it was reasonable

for the officers to believe that entry was necessary to prevent evidence from being lost or

destroyed.  The court also found that the officers had probable cause to enter the home because,

under the totality of the circumstances, there was a "fair probability" that they would find

evidence of a crime.  *Id.* at 1018.  That is not the situation presented on this motion.

Here, plaintiff called the sheriff to report an attempted burglary of her home.

Once the officers arrived on the scene, she refused to let the officers search her home.  Unlike

*Dixon*, there was no prior warrant to search her home.  Moreover, she made it clear that she did

not consent to any search.  Additionally, the homeowner here had not been arrested for crimes

committed within the home.

The court notes that plaintiff's consent to search the home under these

circumstances would be irrelevant if probable cause and exigent circumstances exist.  *United

States v. Jachimko*, 19 F.3d 296, 298 (7th Cir. 1994).  Nonetheless, the issue of whether a

warrantless entry is justified on the basis of exigent circumstances is a question of fact which

cannot, under this Rule 12(b)(6) motion, be resolved.  *Penilla v. City of Huntington Park*, 115

F.3d 707, 710 (9th Cir. 1997).  Whether there is a genuine and material dispute over the

circumstances prior to and at the time of the search remains to be seen.

The issue is further complicated in this case, where plaintiff not only objected to

the search, but also alleges an improper scope of the search.  A warrantless search under exigent

circumstances, must be "strictly circumscribed by the exigencies which justify its initiation."

*United States v. Mines*, 883 F.2d 801, 804 (9th Cir. 1989) (quoting *Mincey v. Arizona*, 437 U.S.

385, 393 (1978)).  Here, plaintiff alleges that despite instructions to search her home only for

injured persons or dead bodies, the deputies rifled through her confidential legal files.  Compl.,

at ¶¶ 11, 12.  Finally, plaintiff alleges that the next day, the deputies reported the substandard

18

1   living conditions they had observed in plaintiff's home to county compliance officers, who later

2   "yellow-tagged the house."  Compl., at ¶¶ 13, 14.  These allegations raise the issue of whether

3   the deputies' search of plaintiff's home, even if legal under the doctrine of exigent

4   circumstances, exceeded its lawful scope.  Again, defendants have not challenged plaintiff's

5   evidence to prove these facts under a Rule 56 motion.  Rather, the instant Rule 12 motion merely

6   challenges the sufficiency of plaintiff's allegations.

7          In order to state a claim under section 1983, a plaintiff must allege that:  (1)

8   defendant was acting under color of state law at the time the complained of act was committed;

9   and (2) defendant's conduct deprived plaintiff of rights, privileges or immunities secured by the

10  Constitution or laws of the United States.  42 U.S.C. § 1983;  *West v. Atkins*, 487 U.S. 42, 48

11  (1988).  Plaintiff has done so here.  She has stated a claim under § 1983, alleging that

12  defendants, acting under color of state law, violated her right to be free from unreasonable

13  searches under the Fourth Amendment when they conducted an "unauthorized, unwarranted

14  search of plaintiff's home."  Compl., at ¶ 9.  Defendants have not pointed to case law holding

15  that the search as alleged in the complaint was justified by exigent circumstances as a matter of

16  law.  Further, plaintiff has also alleged that the search exceeded its lawful scope.  The court finds

17  that the facts, as plead, are adequate to state a claim.  Moreover, nothing in the allegations of the

18  complaint supports the conclusion that the search was legal as a matter of law.  The undersigned

19  therefore RECOMMENDS that defendants' motion to dismiss on this ground be denied.

20                    E. Plaintiff's Fourteenth Amendment Claims

21          Next, defendants challenge plaintiff's reliance on the Fourteenth Amendment.

22  They argue that plaintiff fails to state a claim for violations of the Fourteenth Amendment

23  because her claims relate only to the allegedly unlawful search of her home, which--defendants

24  argue-- is analyzed under the Fourth, not the Fourteenth Amendment.  Plaintiff's reference to the

25  Fourteenth Amendment is virtually unexplained in the complaint.  Defendants seem to perceive

26  from it an effort to state a procedural due process claim; i.e., a separate cause of action under

1    Section 1983 based on a claim that plaintiff was deprived of a liberty interest or property right

2    without being afforded the minimum procedural requirements under the Fourteenth Amendment.

3     However, it appears from the face of the complaint that the only purpose for reference to the

4    Fourteenth Amendment is "the incorporation doctrine (which holds that the Fourteenth

5    Amendment incorporates and applies against the States the Bill of Rights, *see Duncan v.*

6    *Louisiana*, 391 U.S. 145, 147-148 (1968)), and the doctrine of so-called 'substantive due

7    process' (which holds that the Fourteenth Amendment's Due Process Clause protects

8    unenumerated liberties, *see generally Lawrence v. Texas*, 539 U.S. 558 (2003); *Planned*

9    *Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992))." *Tennessee v. Lane*, 541 U.S.

10   509, 124 (2004).  Thus, the complaint simply asserts a claim under Section 1983 for an alleged

11   Fourth Amendment violation based on the unremarkable, but well-established principle that the

12   Fourth Amendment is made applicable to the states (and those acting under state law) through its

13   incorporation under the Fourteenth Amendment's Due Process clause.  That is to say, the

14   Fourteenth Amendment is simply the vehicle by which plaintiff reaches the Fourth Amendment

15   to sue over the search of her home.

16           Plaintiff's "opposition" on the other hand, takes up the suggestion in the motion,

17   and argues that "Solano County and its deputies under color of authority has [*sic*] deprived her of

18   'liberty, [and] property, *without due process of law*,' and has denied to her the equal protection

19   of the laws under said section."  Opp'n at 5:22- 6:1 (emphasis added).  This assertion does

20   suggests that plaintiff might also be attempting to assert a procedural due process claim.  "To

21   state a claim under 42 U.S.C. § 1983 based on an alleged violation of due process, a plaintiff

22   must allege a deprivation of a life, liberty or property interest within the meaning of the

23   Fourteenth Amendment's Due Process Clause." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d

24   517, 523 (9th Cir. 1994) (citing *Board of Regents v. Roth*, 408 U.S. 564, 571(1972)).   To assert

25   such a claim, "a plaintiff must establish that he possessed a 'property interest' that is deserving

26   of constitutional protection." *Brewster*, 149 F.3d at 982 (quoting *Gilbert v. Homar*, 520 U.S.

924 (1997)).   Property interests are not created by the Constitution.  *Board of Regents*, 408 U.S. at 577.  "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Id.*

Here, assuming that plaintiff's complaint actually attempts to assert a procedural due process claim, she has failed to allege any such property interest deserving of constitutional protection, nor has she clarified how defendants' alleged conduct resulted in "loss of liberty." Rather, she has merely alleged that as a result of the "customs, practices, and polices of defendants . . . she suffered injury [including] loss of value of her property, loss of liberty, and loss of home, among other things.[8]  Compl., at ¶ 18.  "The court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Here, plaintiff's conclusory statements regarding defendants' alleged violations of the Due Process Clause cannot be reasonably drawn from the facts alleged.

Plaintiff also fails to state a claim for violations of the Equal Protection Clause. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (citations omitted).  Here, plaintiff has failed to allege, let alone demonstrate, that she is a member of a protected class and that her home was searched because she is a member of such a class.

It is apparent that the gravamen of plaintiff's complaint is a Fourth Amendment

---

[8] The complaint's reference to the loss of value of property and the loss of home appears to be allegations of damages flowing from the alleged unlawful search, not a separate claim that property was taken from her without the minium procedures mandated by the Due Process clause.  However, plaintiff's arguments in her opposition brief confuse the matter by suggesting a procedural due process claim as well.  Accordingly, the court addresses both the Fourth Amendment claim and any intended procedural due process claim.

1  claim over a warrantless and unconsented search of her home, not discrimination and not a

2  failure to provide her with notice and a hearing.  The complaint properly states a Fourth

3  Amendment claim based on the alleged search.  It fails, however, to state a claim for a

4  deprivation of equal protection or procedural due process.  It appears doubtful from the facts as

5  alleged that plaintiff could state such claims.  Nonetheless, plaintiff will be afforded leave to

6  amend.  Fed. R. Civ. P. 15(a).  Accordingly, plaintiff's claims relating to any violation of equal

7  protection or procedural due process under the Fourteenth Amendment are dismissed with leave

8  to amend.

9  F.  Qualified Immunity

10  Next, defendants Gilliam, Knight and Munck argue that they are entitled to

11  qualified immunity for the entry into plaintiff's residence.

12  Qualified immunity protects government officials from suits seeking civil

13  damages.  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of

14  litigation.'"  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S.

15  511, 526, (1985)).  It provides "'an immunity from suit rather than a mere defense to liability

16  . . . .'"  *Id.* at 200 (quoting *Mitchell*, 472 U.S. at 526).

17  Two questions determine whether a government official is entitled to qualified

18  immunity.  First, the court must determine whether "'[t]aken in the light most favorable to the

19  party asserting the injury . . . the facts alleged show the officer's conduct violated a

20  constitutional right.'"  *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (quoting *Saucier*,

21  533 U.S. at 194, 201).  If the answer is "no," the inquiry ends.  *Saucier*, 533 U.S. at 201.  If the

22  answer is "yes," the court must next determine "whether the right was clearly established" and

23  whether a reasonable officer could have believed that the particular conduct at issue was lawful.

24  *Butler v. Elle*, 281 F.3d 1014, 1020 (9th Cir. 2002).

25  As discussed, outstanding factual and legal issues remain to be developed with

26  regard to the search of plaintiff's home.  In particular, it remains to be determined whether or not

22

1   the officer's search of plaintiff's home was justified by exigent circumstances.  The officers'

2   perspective has not been presented.  There are no declarations establishing their reasons for the

3   search, nor any statement of their percipient knowledge of the circumstances.  This is a Rule

4   12(b)(6) motion and the court is confined to the allegations of the complaint.  It does not follow

5   from the facts alleged in the complaint that exigent circumstances justified the search.

6            Defendants' motion also fails to address the scope of the search.  Even if the entry

7   and protective sweep were justified, plaintiff has made allegations that the search was unlawful

8   insofar as it exceeded the scope of the exigency.  Defendants have not presented their version of

9   the facts nor any evidence in support of that version.  Again, unlike a Rule 56 motion, a Rule

10  12(b)(6) motion requires that the facts be accepted as alleged in the complaint.  The instant

11  motion questions whether plaintiff will be able to overcome the qualified good faith immunity of

12  the officers.  They have not, and on this motion could not, presented evidence extrinsic to the

13  complaint to establish facts showing the elements for qualified immunity and, those elements are

14  not established from the face of the complaint.  Nor have defendants invoked the procedural

15  requirements of Rule 56 that would put plaintiff to her proof to support her allegations with

16  evidence.  As discussed above, although it has not been proven at this pleading stage that the

17  deputies actually violated plaintiff's constitutional rights, and that they did so outside the bounds

18  of qualified good faith immunity, defendants have chosen to move under Rule 12(b)(6) and the

19  court must accept as true the facts as alleged in the complaint.   The facts alleged in the

20  complaint are sufficient to overcome this motion.  Accordingly, the court RECOMMENDS that

21  defendants' motion to dismiss the claims against deputies Gilliam, Knight and Munck on the

22  basis of qualified immunity be denied.

23  IV.  <u>CONCLUSION</u>

24            In accordance with the foregoing, IT IS HEREBY ORDERED that:

25            1.  Plaintiff's equal protection and procedural due process claims under the

26  Fourteenth Amendment are dismissed with leave to amend;

2.  Plaintiff shall have thirty (30) days from the date of service of this order to amend the complaint.  Failure to do so will result in a recommendation that those claims be dismissed with prejudice; and,

3.  Defendants' request for judicial notice is granted.

In accordance with the foregoing, IT IS FURTHER RECOMMENDED that:

1. Defendants' motion to dismiss the Solano County Sheriff's Department as a redundant party be granted;

2.  Defendants' motion to dismiss for failure to state a claim against the County be denied;

3.  Defendants' motion to dismiss for failure to state a claim for violations of the Fourth Amendment be denied; and

4.  Defendants' motion to dismiss the claims against deputies Gilliam, Knight and Munck on the basis of qualified immunity be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED:  November 17, 2006.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE