1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11 CAROLYN CARLTON BROCKMEIER,        No. 2:05-cv-02090-MCE-KJN

12           Plaintiff,

13      v.                            <u>MEMORANDUM AND ORDER</u>

14 SOLANO COUNTY SHERIFF'S DEPT.
   and COUNTY OF SOLANO and
15 DEPUTIES GILLIAM, KNIGHT,
   MUNCK, DAVID JAMES, and DOES
16 I THROUGH VI, INCLUSIVE,

17           Defendants.

18                        ----oo0oo----

19      Through the present action, Plaintiff Carolyn Brockmeier

20 ("Plaintiff") seeks damages pursuant to 42 U.S.C. § 1983 for

21 violations of her Fourth Amendment rights stemming from the

22 forced entry and search of her home.  She also seeks damages

23 arising out of subsequent citations issued to her for violations

24 of the housing code.  Presently before the Court is Defendants'

25 County of Solano, Sergeant Walt Gilliam, Deputy Enoch Knight,

26 Deputy Hans Munck, and David James ("Defendants") Motion for

27 Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

28 For the reasons set forth below, Defendants' Motion is denied.

                                1

1

## BACKGROUND[1]

2

3          On or around October 18, 2004,[2] the Solano County Sheriff's
4    Department received a 911 call reporting an attempted burglary at
5    Plaintiff's home.  Defendants Knight and Kramer were dispatched to
6    the home where they met Plaintiff outside.  She was carrying a
7    gun, which she turned over to Defendants, explaining that she had
8    heard a noise at the front door, ran outside with her gun, and
9    surprised a man trying to open her sliding glass door.  Frightened,
10   she fired a shot into the ground, and the man ran off.
11         Defendant Munck arrived and searched the surrounding area
12   for 45 minutes, but was unable to find a trace of the suspect.
13   Officers were likewise unable to find a bullet hole in the ground
14   or shell casings to corroborate Plaintiff's story.
15   Notwithstanding the lack of evidence of a shot being fired, and
16   fearing that the suspect might be inside the home, potentially
17   injured, Defendant Gilliam asked to search inside Plaintiff's
18   home.  She refused, stating that she had already searched the
19   house and there was no one inside.  Defendant Gilliam believed
20   there to be exigent circumstances to enter and search the home
21   for victims or suspects.  Two officers, Deputy Thompson and
22   Defendant Munck, tore off a window screen and entered Plaintiff's
23   home.

24   _____

25         [1] The material in this recitation of facts is taken from the
     Defendants' Statements of Undisputed Material Facts unless
26   otherwise noted.

27         [2] Plaintiff disputes this date and asserts that the events
     described took place on October 20, 2004.  (Pl.'s Opp'n to Defs.'
28   Mot. Summ. J. p. 1.)

1  They were inside for approximately two minutes, during which time

2  they noted garbage and debris on the floor, the stench of spoiled

3  food, stagnant water in the bathtub and feces in the toilet.

4  They also noted that the ceiling in the living room had collapsed

5  and that the swimming pool in the backyard was home to scores of

6  breeding mosquitos.  During their search they did not locate a

7  suspect.  Defendants claim that the officers inside the home did

8  not search Plaintiff's file cabinets, while Plaintiff contends

9  that files containing sensitive information were in disarray when

10  she reentered her home.  (Pl.'s Decl. in Resp. to Decl. of Walt

11  Gilliam p. 2.)  Plaintiff is a semi-retired attorney, and she

12  contends that the officers invaded the attorney-client privilege.

13  Plaintiff also claims that the officers threatened her prior to

14  entering her home and that they kept their hands on their pistols

15  the entire time.  (Pl.'s Decl. in Resp. to Decl. of Hans Munck

16  p. 3.)  She further claims that the officers intentionally

17  smashed her fax machine.  (Id. p. 2.)

18     The officers reported Plaintiff's home to the Solano County

19  Department of Resource Management ("DRM") for suspected health

20  and safety violations.  Shortly thereafter, Defendant James

21  conducted two drive-by inspections and one outdoor inspection of

22  the property.  He noted five inoperative vehicles as well as a

23  missing support beam on the front porch, and fire hazards due to

24  overgrowth of vegetation and debris.  When Plaintiff would not

25  grant his request to further search the property, Defendant James

26  applied for and was granted a warrant to conduct an inspection

27  inside the home.

28  ///

During this inspection he noted various violations.  He then posted a notice outside the home declaring the structure inhabitable.

Plaintiff complained to the DRM about Defendant James.  She maintains that he deterred prospective buyers, telling them that the home was about to be demolished and to "stay away from the deal."  (Pl.'s Decl. in Resp. to Decl. of David James p. 2.) Defendant James denies these allegations and claims that he only informed potential buyers of the defects and violations that he had noted.  The home eventually sold for $273,000.

Defendants now move for summary judgment.  They argue that no reasonable jury would find that the actions of the Officer Defendants violated the constitutional rights of Plaintiff.  They further contend that Defendant James did not violate Plaintiff's rights when citing her home for violations of the housing code. Plaintiff opposes Defendants' Motion for Summary Judgment and brings several additional Motions for Contempt, to Compel, to Strike and Request for Sanctions, and to Continue.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).
///

One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. <u>See</u> Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim...may...move...for a summary judgment in the party's favor upon all or any part thereof"); <u>see also</u> <u>Allstate Ins. Co. v. Madan</u>, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); <u>France Stone Co., Inc. v. Charter Township of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. <u>See</u> Fed. R. Civ. P. 56(a), 56(c); <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968).

///

///

1    In attempting to establish the existence of this factual

2   dispute, the opposing party must tender evidence of specific

3   facts in the form of affidavits, and/or admissible discovery

4   material, in support of its contention that the dispute exists.

5   Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that

6   the fact in contention is material, i.e., a fact that might

7   affect the outcome of the suit under the governing law, and that

8   the dispute is genuine, i.e., the evidence is such that a

9   reasonable jury could return a verdict for the nonmoving party.

10   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

11   (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper

12   Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,

13   "before the evidence is left to the jury, there is a preliminary

14   question for the judge, not whether there is literally no

15   evidence, but whether there is any upon which a jury could

16   properly proceed to find a verdict for the party producing it,

17   upon whom the onus of proof is imposed."  Anderson, 477 U.S. at

18   251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L.

19   Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the

20   moving party has carried its burden under Rule 56(c), its

21   opponent must do more than simply show that there is some

22   metaphysical doubt as to the material facts....Where the record

23   taken as a whole could not lead a rational trier of fact to find

24   for the nonmoving party, there is no 'genuine issue for trial.'"

25   Matsushita, 475 U.S. at 586-87.

26   ///

27   ///

28   ///

6

1     In resolving a summary judgment motion, the evidence of the

2  opposing party is to be believed, and all reasonable inferences

3  that may be drawn from the facts placed before the court must be

4  drawn in favor of the opposing party.  <u>Anderson</u>, 477 U.S. at 255.

5  In judging evidence at the summary judgment stage, the court does

6  not make credibility determinations or weigh conflicting

7  evidence.  <u>See</u> <u>T.W. Elec. v. Pacific Elec. Contractors Ass'n</u>, 809

8  F.2d 626, 630-631 (9th Cir. 1987), citing <u>Matsushita Elec. Indus.</u>

9  <u>Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

10 Nevertheless, inferences are not drawn out of the air, and it is

11 the opposing party's obligation to produce a factual predicate

12 from which the inference may be drawn.  <u>Richards v. Nielsen</u>

13 <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

14 <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

15

16                              **ANALYSIS**

17     **A.    Sergeant Walt Gilliam, Deputy Enoch Knight, Deputy**
           **Hans Munck**

18

19     Defendants Munck, Knight and Gilliam ("Officers") move for

20 summary adjudication of Plaintiff's claim that said Defendants

21 violated her Fourth Amendment rights by conducting a search of

22 her home without a warrant.[3]

23 ///

24 ///

25

---

26      [3] The Court notes that Defendants' Motion also addresses a
   possible claim by Plaintiff for violation of Fourteenth Amendment
27 substantive due process rights.  However Plaintiff's Complaint
   does not specifically assert such a claim, and therefore it will
28 not be addressed.

                                   7

As regards to these Officers, the propriety of their warrantless search rests on a determination of whether there were emergency or exigent circumstances to justify the forced entry of Plaintiff's home.

"Searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). However, "[t]here are two general exceptions to the warrant requirement for home searches: exigency and emergency." United States v. Martinez, 406 F.3d 1160, 1164 (9th Cir. 2005). "These exceptions are 'narrow' and their boundaries are 'rigorously guarded' to prevent any expansion that would unduly interfere with the sanctity of the home." Hopkins v. Bonvicino, 573 F.3d 752, 763 (9th Cir. 2009) (citing United States v. Stafford, 416 F.3d 1068, 1073 (9th Cir. 2005)).

"The 'emergency' exception stems from the police officers' 'community caretaking function' and allows them 'to respond to emergency situations' that threaten life or limb; this exception does 'not [derive from] police officers' function as criminal investigators." United States v. Struckman, 603 F.3d 731, 738 (9th Cir. 2010) (emphasis in original) (citing Hopkins, 573 F.3d at 763). "By contrast, the 'exigency' exception does derive from the police officers' investigatory function; it allows them to enter a home without a warrant if they have both probable cause to believe that a crime has been committed and a reasonable belief that their entry is 'necessary to prevent...the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.'" Id. (citing Hopkins, 573 F.3d at 763).

To succeed in invoking these exceptions, "the government must...show that a warrant could not have been obtained in time." Id. (citing United States v. Good, 780 F.2d 773, 775 (9th Cir. 1986)).

Officers assert that the totality of circumstances provided exigent and emergency circumstances to justify the warrantless entry to Plaintiff's residence.

### 1.   Exigent Circumstances

Officers assert that their warrantless entry into Plaintiff's home was justified under the exigent circumstances exception to the Fourth Amendment.  Officers argue that the 9-1-1 call reporting robbery and shots fired gave probable cause to believe that an ongoing criminal activity was occurring. Further, because their search had not reveled a suspect or any sign of where the gunshot occurred, coupled with Plaintiff's refusal to allow entry to her home, Officers argue exigent circumstances existed to enter the home in order to prevent possible escape of the suspect, destruction of evidence, or potential future injury to the victim, officers or suspect.

Yet such justifications are insufficient grounds to seek excuse for failure to obtain a search warrant.  Nothing in the record suggests that there was relevant evidence within the home that would be destroyed without immediate intervention.  Nothing in the record suggests that the Officers, or Plaintiff, were at risk of immediate injury.

///

To the extent that the Officers were concerned that the suspect may have been injured within the home, or was hiding within the home, this mere possibility is hardly  sufficient to overcome the "overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic." Struckman, 603 F.3d at 746.

Exigent circumstances exist only in "few in number and carefully delineated" scenarios.  Id. at 743.  Here, Officers might have secured the premises and sought a warrant permitting them to enter.  Under the facts presented, Officers have failed to clearly establish that a warrant could not have been obtained in time as required for application of the exigency exception. Id. at 738.  Thus, the totality of the circumstances do not so clearly "justify abandoning the Fourth Amendment's traditional hostility to police entry into a home without a warrant" as to support summary adjudication in favor of Defendants.  See Georgia v. Randolph, 547 U.S. 103, 126 (2006).

### 2.   Emergency Circumstances

Alternatively, under the emergency exception, Officers argue that because the burglary suspect could not be located, no bullet hole or shell casing was found where Plaintiff claimed the gunshot occurred, and because Plaintiff was acting defensively with respect to the entry of her home, sufficient facts existed to cause them to believe that an individual may still be within the residence and in need of medical attention.
///

1   Officers assert that this belief supports a finding that

2   "emergency circumstances" were present as to justify warrantless

3   entry into Plaintiff's home.

4        However, Officers misconstrue the parameters of the

5   emergency exception.  While it is true that "law enforcement

6   officers may enter a home without a warrant to render emergency

7   assistant to an injured occupant or to protect an occupant from

8   imminent injury," <u>Brigham City, Utah v. Stuart</u>, 547 U.S. 398, 403

9   (2006), they must have an "objectively reasonable basis for

10  concluding that there is an *immediate* need to protect others or

11  themselves from serious harm," <u>United States v. Snipe</u>, 515 F.3d

12  947, 951-52 (9th Cir. 2008) (emphasis added).

13       Here, nothing in the record so clearly establishes that there

14  was a potentially injured occupant within Plaintiff's home as to

15  warrant summary adjudication under the emergency exception.  The

16  inability to locate the suspect or locate a shell casing could

17  easily support a number of plausible scenarios, including the

18  possibility that the burglar was not present at all, rather than

19  present in the home.  The "objectively reasonable" standard

20  required for the emergency exception inherently calls for factual

21  determinations to be made by a reasonable jury.  Summary

22  adjudication, based on the facts presented, would be inappropriate.

23       Accordingly, at this stage of the proceedings neither the

24  emergency nor exigency exception to Fourth Amendment prohibition

25  against a warrantless search has been sufficiently established by

26  Defendants.  To do so at this juncture would require the Court to

27  make factual determinations which it cannot due in a motion for

28  summary judgment.

11

Defendants' Motion for Summary Adjudication on Plaintiff's Fourth
Amendment claim against Defendants Munck, Knight and Gilliam is
denied.

### B.   David James

Defendant David James moves for summary judgment on
Plaintiff's claims against him arguing that Plaintiff cannot
establish that his conduct in enforcing housing and municipal
codes constituted a violation of Plaintiff's procedural due
process rights or substantive due process rights.

Although the Court is doubtful of Plaintiff's ability to
ultimately succeed on her constitutional claims against James, at
this stage of the proceedings Plaintiff need not yet prove
meritorious.  Rather it is James's burden, as the moving party,
to show that there is no genuine dispute as to any material fact.
He has not carried this burden here.

James argues that he is entitled to judgment because
Plaintiff has failed to allege that the state remedial process
for property deprivations was inadequate.  However Plaintiff's
opposition contends that she was repeatedly denied information
regarding her housing citations, that there was a six-week delay
in her being informed of code violations, and that such
information was only provided subsequent to a "scathing letter to
[James's] boss."  Based on these allegations, a reasonable jury
could find that Plaintiff was not afforded proper access to the
state remedial process.

///

12

Accordingly, summary adjudication in favor of James would not be
appropriate at this time. Summary adjudication on Plaintiff's
claims against Defendant David James is denied.

### C.   Qualified Immunity of Individual Defendants

     Defendants Munck, Knight, Gilliam and James contend that
they are entitled to qualified immunity because no constitutional
violation occurred, or alternatively, that the law regarding
their conduct is not clearly established.  The Court rejects
their argument for qualified immunity as a genuine dispute exists
as to whether said Defendants violated clearly established
constitutional mandates.

### D.   County of Solano

     The County of Solano (the "County") moves for summary
judgment on the grounds that Plaintiff cannot establish that its
policies, customs, or practices were the moving force behind any
violation of Plaintiff's constitutional rights.

     A plaintiff may hold a municipality liable under § 1983 for
its official acts pursuant to policy, regulation, custom or
usage.  Chew v. Gates, 27 F.3d 1432, 1444 (9th Cir. 1994) (citing
Monell v. Dept. of Soc. Serv. of City of N.Y., 436 U.S. 658,
690-91 (1978)).  The municipality policy need only cause the
constitutional violation; it need not be unconstitutional per se.
Jackson v. Gates, 975 F.2d 648, 654 (9th Cir. 1992).
///

13

A policy "causes" an injury where it is "the moving force" behind the constitutional violation.  Monell, 436 U.S. at 694. Alternatively, a municipality may also be liable for failing to act, thereby exhibiting "deliberate indifference" to constitutional rights.  City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989).

Here, just as a genuine dispute of material facts exist as to claims against Defendants Gilliam, Knight, Munck and James, so too does a genuine dispute exist as to the County in its capacity as the policymaker overseeing the individual defendants' actions. A reasonable jury could find that the Officers forced entry into Plaintiff's home was either pursuant to an accepted custom of the County, or alternatively that the County exhibited deliberate indifference to Officers' warrantless search.

As to the imposition of housing citations, Plaintiff has challenged the validity of the citations issued and has alleged that "county officials" gave prospective buyers faulty information regarding her home.  A reasonable jury could find that the conduct Plaintiff complains of is the result of policies, regulations or customs of the County.

Accordingly, summary adjudication of Plaintiff's claims against the County of Solano are denied.

///

///

///

///

///

///

14

**E.   Plaintiff's Cross-Motions**


Filed concurrently with her Opposition to Defendants' Motion for Summary Judgment (ECF No. 110), Plaintiff has brought a Motion for Contempt, Motion to Compel, Motion to Strike and Request for Sanctions, and Motion to Continue.  However, these Motions were improperly noticed, untimely filed and are hereby stricken as being in non-compliance with Local Rule 230.


**CONCLUSION**


Defendants' Motion for Summary Judgment (ECF No. 107) is DENIED.[4]

IT IS SO ORDERED.

Dated: August 18, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[4] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefing.  E.D. Cal. Local Rule 230(g).

15